# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Richard Schlueter, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No: 15 C 50024 |
| | ) | |
| Chris Barnhart, et al., | ) | |
| | ) | |
| *Defendants*. | ) | Judge Frederick J. Kapala |

## ORDER

Defendant Avitall's motion to dismiss [69] is granted. Defendant Shicker's motion to dismiss [75] is granted. All claims against these defendants are dismissed, and they are terminated from this action.

## STATEMENT

In his third amended complaint, plaintiff raises a number of claims pursuant to 42 U.S.C. § 1983 based on alleged deliberate indifference to his serious medical needs against various medical personnel and prison officials, including Dr. Boaz Avitall, a cardiologist working at the University of Illinois-Chicago Medical Center ("UIC"), and Dr. Louis Shicker, the Chief Medical Director for the Illinois Department of Corrections ("IDOC"). These defendants have each filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, both motions to dismiss are granted.

## I. BACKGROUND

According to the allegations in the complaint, which the court accepts as true for purposes of this order, plaintiff has been incarcerated at the Dixon Correctional Center ("Dixon") since 2003. Prior to his incarceration, plaintiff was diagnosed with a cardiac condition known as bradycardia, which causes plaintiff to have a slow heart rate of less than 60 beats per minute. This diagnosis was confirmed by unnamed physicians at UIC in February 2007 and June 2010, at which time no additional abnormalities were detected and plaintiff was informed that there was no need for him to have a pacemaker.

Between June 2010 and March 2011, plaintiff complained to the medical personnel at Dixon about episodes of dizziness, fainting, and headaches. On March 14, 2011, plaintiff was scheduled to be seen by Dr. Imhotep Carter, another defendant in this case who was the Medical Director at Dixon during the relevant time period, but Dr. Carter refused to perform a physical examination of plaintiff at that time. Approximately eleven days later, however, with no recent examination or testing, Dr. Carter prescribed Propranolol for plaintiff, which is a beta-blocker primarily intended

for patients with abnormally fast heart rates. After taking this prescribed medication, plaintiff's bradycardia condition significantly worsened. Over the next several months, despite plaintiff's complaints, various medical personnel at Dixon prescribed and/or provided plaintiff with various beta-blockers, including Propanolol, Metoprolol Tartrate, and Nadolol, all of which are cardiotoxic to someone who has bradycardia and caused plaintiff's condition to deteriorate.

On October 26, 2012, plaintiff was taken to UIC to see a cardiologist and was subsequently admitted to the hospital for approximately seven days after his vital signs showed a dangerously low heart rate of 28 beats per minute. Plaintiff was not given any beta blockers while at UIC, and within 48 hours his heart rate returned to an acceptable level of 45-50 beats per minute. During this admission, Dr. Avitall advised plaintiff that he did not need a pacemaker. Upon his release from UIC, plaintiff was instructed to wear a "Holter monitor" for 30 days in order to provide an accurate picture of his heart functioning. While he was on the Holter monitor, the medical personnel at Dixon continued to give plaintiff his prescribed beta-blocker medications.

On January 18, 2013, plaintiff returned to UIC and was seen by Dr. Avitall, who indicated that the results from the Holter monitor showed that plaintiff needed surgery to insert a pacemaker. According to plaintiff, at that time, Dr. Avitall "was, or should have been, aware of [plaintiff's] history of having been on beta-blocker medications, including during the time he was going through the Holter monitor test." On February 5, 2013, plaintiff returned to UIC where Dr. Avitall performed the surgery to install the pacemaker. On February 7, 2013, plaintiff was back at Dixon and was seen by another defendant, Dr. Kevin Smith, who informed plaintiff that he should not be taking Nadolol since it has the effect of lowering one's heartbeat and immediately ordered the medication to be stopped. Dr. Smith further indicated that the results from the Holtor monitor test would have been affected by the fact that plaintiff was receiving a beta blocker at that time.

According to plaintiff, Dr. Avitall and others "had a duty to provide appropriate medical evaluation and treatment to [plaintiff] at all times . . . consistent with the standards of practice for a physician," as well as "a duty to be familiar with their patient's applicable medical history and medical conditions." Plaintiff further alleges that, as a result of the beta-blocker medications he was taking, the results of the Holter monitor "were improperly altered and were not a proper basis on which to make a decision to insert a pacemaker device." As such, plaintiff claims that Dr. Avitall and others were deliberately indifferent to his serious medical needs by, among other things, their "failure to be fully aware of [plaintiff's] health history and cardiac conditions."

## II. ANALYSIS

Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations in the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," and must "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alterations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

2

## A. Defendant Avitall's Motion to Dismiss

In his motion to dismiss, Dr. Avitall argues, among other things, that plaintiff's allegations against him fail to state a claim because they do not rise to the level of deliberate indifference. A prison official violates the Eighth Amendment if he is deliberately indifferent to the serious medical needs of a prisoner. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind." Edwards v. Snyder, 478 F.3d 827, 830 (7th Cir. 2007) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). In this case, Dr. Avitall does not dispute that plaintiff's allegations concern a serious medical condition, and therefore the focus of his argument is on the subjective component.

To satisfy the subjective element of a deliberate indifference claim, a plaintiff must allege that "the official [had] subjective knowledge of the risk to the inmate's health, and the official . . . disregard[ed] that risk." Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). "[D]eliberate indifference entails something more than mere negligence." Farmer, 511 U.S. at 835. Thus, allegations that establish medical malpractice are insufficient to state a claim for deliberate indifference under § 1983. See Petties v. Carter, 836 F.3d 722, 729 (7th Cir. 2016) ("[A]dmitted medical malpractice does not automatically give rise to a constitutional violation."). "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim." Id. at 728 (citing Farmer, 511 U.S. at 836-38). Instead, "a plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." Id. (citing Farmer, 511 U.S. at 837); see also Hare v. City of Corinth, Miss., 74 F.3d 633, 650 (5th Cir. 1996) ("[T]he correct legal standard is not whether the jail officers 'knew or should have known,' but whether they had gained actual knowledge of the substantial risk . . . and responded with deliberate indifference.").

In this case, the allegations in plaintiff's third amended complaint are insufficient to establish anything beyond negligence or medical malpractice on the part of Dr. Avitall. Indeed, plaintiff makes numerous allegations concerning Dr. Avitall's "duty to provide appropriate medical evaluation and treatment . . . consistent with the standards of practice for a physician," as well as his "duty to be familiar with" plaintiff's applicable medical history. These are classic allegations of negligence, and while the court expresses no opinion on whether that type of claim might have merit, it is clear that these allegations are insufficient to show that Dr. Avitall had actual knowledge of a substantial risk of harm to plaintiff, or that he chose to disregard that risk and insert a pacemaker. In fact, plaintiff specifically alleged Dr. Avitall's lack of actual knowledge when he asserted in the complaint that Dr. Avitall "fail[ed] to be fully aware of [plaintiff's] health history and cardiac conditions."[1] Accordingly, the court concludes that the allegations in Count I of the third amended

---

[1] The closest plaintiff came to alleging actual knowledge occurred earlier in the complaint, where plaintiff stated, in a somewhat vague and conclusory manner, that Dr. Avitall "was, or should have been, aware of [plaintiff's] history of having been on beta-blocker medications, including during the time he was going through the Holter monitor test." However, this type of allegation is insufficient to make out a claim for deliberate indifference. See Petties, 836 F.3d at 728 ("[O]bjective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim."); Hare, 74 F.3d at 650 ("[T]he correct legal standard is not whether the jail officers 'knew or should have known,' but whether they had gained actual knowledge of the substantial risk . . . and responded with deliberate indifference."). By pleading in that manner, it is clear that plaintiff was unable to allege,

complaint do not state a claim for deliberate indifference in violation of the Eighth Amendment.

In his response to the motion to dismiss, plaintiff relies primarily on Chance v. Armstrong, a case from nearly twenty years ago out of the Second Circuit, for the proposition that certain instances of medical malpractice may rise to the level of deliberate indifference when the doctor evinces a conscious disregard of a substantial risk of serious harm. 143 F.3d 698, 703 (2d Cir. 1998). Despite the somewhat unusual citation, the court fails to see how this case even helps plaintiff. A conscious disregard of a substantial risk of harm still requires that the doctor had actual knowledge of the risk and chose to ignore it. See id. ("[T]he deliberate indifference standard requires the plaintiff to prove that the prison official knew of and disregarded the plaintiff's serious medical needs." (citing Farmer, 511 U.S. at 837)). Indeed, in Chance, the Court gave as an example to illustrate the point a doctor who "consciously chooses an easier and less efficacious treatment plan." Id. In addition, the allegations in Chance are readily distinguishable from those in the instant case. The plaintiff in Chance alleged that the defendant doctors recommended a certain treatment "not on the basis of their medical views, but because of monetary incentives." Id. at 704. The Court concluded that "[t]his allegation of ulterior motives, if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment." Id. In contrast, in this case, there is no allegation that the decision by Dr. Avitall to insert a pacemaker was based on some ulterior motive, and in fact, it would have been much more cost effective to simply take plaintiff off his beta-blocker medications rather than perform this surgical procedure. Accordingly, plaintiff's reliance on Chance does not alter this court's conclusion that plaintiff's allegations against Dr. Avitall do not rise to the level of deliberate indifference.

As a final matter, Dr. Avitall also moves to dismiss Counts II and III because there are no allegations against him in those counts. Notwithstanding plaintiff's brief argument in response, the court agrees with Dr. Avitall and concludes that neither count states a claim against Dr. Avitall. In Count II, plaintiff alleges deliberate indifference to his future medical needs, including a lack of follow-up care for his pacemaker. However, there are no allegations in the complaint that Dr. Avitall is responsible for this alleged lack of treatment or that he ever refused to treat plaintiff despite knowledge that plaintiff was in need of further medical care. In Count III, plaintiff alleges what appears to be a Monell claim against defendant Wexford Health Sources, Inc., and there are no allegations specifically directed against Dr. Avitall or any factual allegations to suggest that he has anything to do with Wexford's policy decisions. Accordingly, both Counts II and III are dismissed as to Dr. Avitall.

Based on all of these reasons, Dr. Avitall's motion to dismiss is granted.[2] All claims against Dr. Avitall are dismissed, and he is terminated from this action.

---

consistent with his Rule 11 obligations, that Dr. Avitall had actual knowledge of plaintiff's medication history at the time he decided to insert the pacemaker.

[2]The court need not address Dr. Avitall's alternative arguments that the claims against him should be dismissed based on either the statute of limitations or plaintiff's alleged failure to comply with Rule 10(b) and expresses no opinion on them.

4

## B. Defendant Shicker's Motion to Dismiss

In his motion to dismiss, Dr. Shicker argues that plaintiff has failed to state a claim against him because there are no allegations of sufficient personal involvement to support a claim under § 1983. "It is well established that for constitutional violations under § 1983 a government official is only liable for his or her own misconduct." Perez v. Fenoglio, 792 F.3d 768, 781 (7th Cir. 2015) (alterations omitted); see also Pepper v. Vill. of Oak Park, 430 F.3d 805, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation."); Palmer v. Marion Cty., 327 F.3d 588, 594 (7th Cir. 2003) ("§ 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim."). Therefore, in order to state a claim against a prison official acting in a supervisory role, the plaintiff "may not rely on a theory of respondeat superior and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." Perez, 792 F.3d at 781. In addition, "supervisors can violate the Constitution themselves if they know about the unconstitutional conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." T.E. v. Grindle, 599 F.3d 583, 588 (7th Cir. 2010) (alteration omitted).

Here, there are no allegations in plaintiff's third amended complaint that make it plausible that Dr. Shicker was personally involved in the medical care provided to plaintiff. See Palmer, 327 F.3d at 594. Moreover, there are no allegations to support a claim that he was aware of the unconstitutional conduct of others and helped to facilitate it, approve it, condone it, or that he turned a blind eye towards that conduct. See Grindle, 599 F.3d at 588. Accordingly, without these allegations, plaintiff is unable to state a claim for deliberate indifference against Dr. Shicker.

In his response, plaintiff asserts that, by allowing certain "policies to persist," Dr. Shicker acted with a conscious disregard of a substantial risk of serious harm and he attempts to equate these allegations with the allegations against Dr. Shicker in Heard v. Tilden, 809 F.3d 974 (7th Cir. 2016), which were found to be sufficient to state a claim. These arguments do not alter the court's conclusion. Plaintiff alleged in the third amended complaint that Dr. Shicker failed to ensure that there were policies and procedures in place at IDOC that would have prevented plaintiff from being prescribed beta-blocker medications when those medications were contra-indicated for him. Even assuming for the sake of argument that this lack of policies and procedures was a cause of plaintiff's injury, the absence of policies does not establish the necessary personal involvement by Dr. Shicker in order to hold him liable for a knowing or conscious disregard of a serious risk of harm to plaintiff.

Furthermore, a review of the allegations in Heard demonstrates why that case is readily distinguishable from the instant case. In Heard, the plaintiff specifically alleged that Dr. Shicker "did not act to stop the delay [in treatment for a hernia] despite his actual knowledge that the delay was causing Heard to suffer pain." Id. at 980-81. The Seventh Circuit held that the "allegation that Dr. Shicker was involved directly in the choice to stall necessary surgery and prolong Heard's pain is enough to state a claim." Id. at 981. Thus, unlike this case, there were allegations in Heard which, if proven true, would have shown that Dr. Shicker had actual knowledge of a serious medical need and was deliberately indifferent to that need. In this case, there are no allegations to suggest that Dr. Shicker had any involvement whatsoever in plaintiff's treatment or that he even knew about the treatment plaintiff was receiving.

Therefore, the court concludes that plaintiff has failed to state a claim for relief against Dr. Shicker in Counts I and II of the third amended complaint. As for Count III, as noted earlier, this claim seems to be based solely on the alleged policies and procedures of Wexford, and there are no allegations to plausibly suggest that Dr. Shicker had any direct involvement in creating those alleged policies, or that he in any has facilitated, approved, condoned, or turned a blind eye toward those policies. Accordingly, Count III also fails to state a claim against Dr. Shicker.

Based on all of these reasons, Dr. Shicker's motion to dismiss is granted.[3] All claims against Dr. Shicker are dismissed, and he is terminated from this action.

### III. CONCLUSION

Based on the foregoing, the pending motions to dismiss filed by Dr. Avitall and Dr. Shicker are granted.

Date: 1/23/2017         ENTER:

_____
FREDERICK J. KAPALA

District Judge

---

[3] The court need not address Dr. Shicker's alternative argument that plaintiff's complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil procedure and expresses no opinion on that issue.